IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v. | )<br>)<br>) |
| JORGE STEVE ZEPEDA IRIAS<br>  a/k/a "Tiburcio,"<br>  a/k/a "Tiburón,"<br>  (All Counts) | )<br>)<br>)<br>)<br>) |
| JENIFER ICELA ROMERO FABIAN,<br>  (Counts 1, 2, 3, & 4) | )<br>)<br>) |
| JUAN FRANCISCO ENRIQUEZ CERRITOS<br>Sr.,<br>  a/k/a "Paco,"<br>  (Count 1) | )<br>)<br>)<br>)<br>) |
| JORGE MANUEL ROMERO,<br>  (Count 2, 3, & 4) | )<br>)<br>) |
| OSCAR RAQUEL CUELLAR MACUA,<br>  (Count 2, 3, & 4) | )<br>)<br>) |
| EVELYN ESMERALDA VILLATORO,<br>  (Count 2 & 3) | )<br>)<br>) |
| OSCAR VLADIMIR PADILLA PORTILLO,<br>  (Count 2) | )<br>) |
| and | )<br>) |
| DAMON DARNELL GRAY<br>  (Count 2) | )<br>)<br>) |
| Defendants. | )<br>) |

Criminal No. 1:26-CR-35

Count 1: 18 U.S.C. §§ 371 and 922(a)(1)(A)
(Conspiracy to Deal in Firearms Without a
License)

Count 2: 21 U.S.C. §§ 846 and 841(a)(1)
(Conspiracy to Distribute a Controlled
Substance)

Count 3: 21 U.S.C. § 846 and 18 U.S.C. § 2
(Distribution of Cocaine)

Count 4: 21 U.S.C. § 846 and 18 U.S.C. § 2
(Distribution of Cocaine)

Counts 5: 18 U.S.C. § 924(c)(1)(A)(ii)
(Using, Carrying, Brandishing of a Firearm in
Furtherance of a Drug Trafficking Crime)

Count 6: 18 U.S.C. § 924(c)(1)(A)(i)
(Possession of a Firearm in Furtherance of a
Drug Trafficking Crime)

Forfeiture Notice

## SUPERSEDING INDICTMENT

March 2026 Term — at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

<u>General Allegations</u>

1.  From in and around July 2024 and continuing up to and including in and around January 2026, defendants JORGE STEVE ZEPEDA IRIAS, a/k/a "Tiburcio," a/k/a "Tiburón," (hereafter "ZEPEDA"), JUAN FRANCISCO ENRIQUEZ CERRITOS, Sr. a/k/a "Paco," (hereafter "CERRITOS"), and JENIFER ICELA ROMERO FABIAN (hereinafter "JENIFER ROMERO") engaged in dealing firearms.

2.  ZEPEDA, JENIFER ROMERO, and CERRITOS do not have licenses to deal in firearms.

3.  These firearms deals occurred at the following two locations, both of which are located within the Eastern District of Virginia:

    a.  A property known as "Rancho Los Cerritos" or "the Cerritos Ranch" (hereinafter "the Cerritos Ranch"), which is a contiguous property located at 4210 and 4204 James Madison Highway in Haymarket, Virginia. The Cerritos Ranch had been leased to CERRITOS and his wife since 2009, which encompasses all times pertinent to this investigation. CERRITOS was the lessee of the Cerritos Ranch and ZEPEDA was the manager of the Cerritos Ranch. In and around August 2024, ZEPEDA stated that CERRITOS was his boss.

    b.  The residence of ZEPEDA and JENIFER ROMERO is located on Braddock Road in Chantilly, Virginia (hereinafter, "the ZEPEDA and ROMERO residence" or "the residence").

4.  From in and around December 2024, and continuing thereafter up to and including January 2026, ZEPEDA and JENIFER ROMERO, often in conjunction with the firearms sales discussed above, distributed cocaine at the ZEPEDA and ROMERO residence.

2

5.    On at least one of those occasions, on or about May 13, 2025, ZEPEDA used and brandished one or more firearms.

6.    From in and around December 2024, and continuing thereafter up to and including January 2026, additional distribution of cocaine, often in conjunction with the firearms sales discussed above, was conducted by ZEPEDA and JENIFER ROMERO, by themselves and in arrangement with OSCAR RAQUEL CUELLAR MACUA (hereinafter "CUELLAR"), and EVELYN ESMERALDA VILLATORO (hereinafter "VILLATORO") from locations within the Eastern District of Virginia. ZEPEDA, JENIFER ROMERO, CUELLAR, and VILLATORO then traveled to various locations in Washington, D.C. to obtain the cocaine from JORGE MANUEL ROMERO (hereinafter "ROMERO"), OSCAR VLADIMIR PADILLA PORTILLO (hereinafter "PORTILLO"), DAMON DARNELL GRAY (hereinafter "GRAY"), and others, to bring the cocaine back to the Eastern District of Virginia.

7.    On at least one occasion, on or about September 22, 2025, ZEPEDA attended one of these cocaine distribution meetings armed with a firearm.

3

## COUNT ONE

*(Conspiracy to Deal in Firearms Without a License)*

THE GRAND JURY CHARGES THAT:

8. The allegations of the introductory paragraphs 1-7 above are incorporated by reference as if fully set forth herein.

9. From in and around July 2024 and continuing thereafter to at least in and around January 2026, the exact dates being unknown to the Grand Jury, within the Eastern District of Virginia, and elsewhere, the defendants, JORGE STEVE ZEPEDA IRIAS, JENIFER ICELA ROMERO FABIAN, and JUAN FRANCISCO ENRIQUEZ CERRITOS, Sr., knowingly and unlawfully combined, conspired, confederated, and agreed together and with each other and with other persons, both known and unknown to the Grand Jury, to willfully engage in the business of dealing in more than 25 firearms, and in the course of such business, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, in violation of Title 18, United States Code, Section 922(a)(1).

## MANNER AND MEANS OF THE CONSPIRACY

The primary purpose of the conspiracy was to make money through dealing in firearms, without a license, within the Eastern District of Virginia and elsewhere. The manner and means by which the defendants and their co-conspirators conducted this conspiracy included, but were not limited to, the following:

10. It was part of the conspiracy that members of the conspiracy acquired firearms from a source or sources of supply in the Eastern District of Virginia and elsewhere.

4

11. It was further part of the conspiracy that members of the conspiracy distributed firearms in the Eastern District of Virginia and elsewhere.

12. It was further part of the conspiracy that members of the conspiracy possessed firearms for further distribution in the Eastern District of Virginia and elsewhere.

13. It was further part of the conspiracy that a member of the conspiracy possessed two firearms in furtherance of drug trafficking in the Eastern District of Virginia and elsewhere.

14. It was further part of the conspiracy that none of the named defendants possessed a license to legally deal in firearms.

15. It was further part of the conspiracy that members of the conspiracy used cell phones to communicate with each other, including through voice calls and text messages.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, the defendants and their conspirators performed the following overt acts and others in the Eastern District of Virginia and elsewhere:

16. **Firearm sale 1**: On or about July 26, 2024, ZEPEDA sold to a Confidential Source (hereinafter, "CS," and referred to in the masculine regardless of gender) a P365 Sig Sauer pistol, bearing serial number 66B977231, and a magazine for $850.00 at the Cerritos Ranch. ZEPEDA also gave the CS two boxes of 9mm ammunition as part of the deal.

17. **Firearm Sale 2**: On or about August 2, 2024, ZEPEDA again met with the CS at the Cerritos Ranch and sold to the CS for $2,000.00 an Arsenal AK-47, Model SAM7SF, bearing serial number BE532185, and five magazines, some with ammunition in them.

18.   **Firearm sale 3**: On or about August 28, 2024, the CS again went to the Cerritos Ranch for a firearms purchase and met with CERRITOS and ZEPEDA, who retrieved two pistols stored inside a compartment in a red Dodge Ram pickup truck and gave them to the CS in exchange for $1,650. ZEPEDA handed the money to CERRITOS. The pistols ZEPEDA and CERRITOS sold the CS were: a Fabrique Nationale Herstal Belgique 9mm pistol, bearing serial number 245NM03967, containing one magazine with seven rounds of ammunition, and a Taurus PT111 Millennium G2 9mm pistol, bearing serial number TJZ92181, containing one magazine with three rounds of ammunition. ZEPEDA represented that both guns were untraceable because they were bought second-hand and not in a gun store.

19.   **Firearm sale 4**: On or about September 19, 2024, ZEPEDA and CERRITOS sold to the CS an AR-15 rifle, bearing serial number MTS04612, at the Cerritos Ranch, where they test fired the firearm. In exchange for the AR-15, the CS gave $2,000 to ZEPEDA, who then handed the money to CERRITOS.

20.   On or about September 19, 2024, CERRITOS told the CS that he also had a sniper rifle he could sell the CS. CERRITOS also provided to the CS numerous rounds of .223 and 5.56 ammunition that CS could use with the AR-15 rifle.

21.   **Firearm sale 5**: On or about November 15, 2024, ZEPEDA sold to the CS four firearms for $4,100 at the Cerritos Ranch. The firearms were: (1) a CN ROMARM 5A/CUGIR AK-47, 7.62 x 39mm caliber rifle, bearing serial number ED3426; (2) a Kel-Tec .380 caliber pistol, bearing serial number HUE76; (3) a Phoenix Arms, Model HP22A, .22 caliber pistol, bearing serial number 4079101; and (4) a Kimber, Black Micro 9, 9mm caliber pistol, bearing serial number PB0411385, which was reported as stolen in Fairfax County, Virginia, along with various ammunition rounds.

6

22.  In and around November 2024, ZEPEDA discussed with the CS purchasing a kilogram of cocaine and how much profit could be made from selling it.

23.  **Firearm sale 6**: On or about December 4, 2024, ZEPEDA sold to the CS the following items at the Cerritos Ranch for a total of $2,550: a PMG KAHR Arms, 9mm caliber pistol with a magazine; a Polymer80, Inc. pistol with two magazines; six rounds of ammunition Both of these firearms lacked serial numbers. ZEPEDA also sold the CS approximately 7.5 grams of cocaine and 12 pills of presumed narcotics. It was subsequently determined that the 12 pills did not contain a detectable amount of narcotics.

24.  **Firearm sale 7**: On or about January 10, 2025, at the Cerritos Ranch, ZEPEDA sold the CS the following items for $6,400: a BMW vehicle; a Glock, Model 38, .45 caliber pistol, bearing serial number HCD233, with three magazines; and a Kel-Tec, Model PLR-22, .22 caliber pistol, bearing serial number U3362, with a scope, and a magazine. The magazine from the Kel-Tec PLR-22 had a compartment that had small orange pellets in it, which ZEPEDA explained was intended to trick law enforcement into thinking the weapon was not a real firearm.

25.  On that same day, ZEPEDA told the CS that he had sold over 100 guns to MS-13 in the past.

26.  On that same day, ZEPEDA removed and showed to the CS several additional weapons that he wanted to sell for $8,000, including a Smith & Wesson .38; a Smith & Wesson 9mm; a 300-blackout rifle; a Taurus 9mm; an unknown rifle; and a small unknown type of pistol. The CS did not purchase these additional weapons.

27.  **Firearm sale 8**: On or about January 16, 2025, ZEPEDA sold the following five firearms to the CS at the Cerritos Ranch: (1) a Ruger AR-556, semi-automatic AR-15 style rifle, bearing serial number 854-32521, with two magazines; (2) a Taurus .40 caliber pistol, bearing

7

serial number SKP25544, which was reported as stolen, with five rounds of ammunition loaded in the magazine that was inserted in the weapon; (3) a Beretta 9mm pistol, bearing serial number AXC046003, with five rounds of ammunition in the magazine that was inserted in the weapon and one round in the chamber; (4) a Dan Wesson Arms .32 caliber revolver, bearing serial number F001084; and (5) a Smith & Wesson .38 caliber revolver, bearing serial number 96K4530. Additionally, ZEPEDA included in the sale a 31-round high capacity 9mm Glock magazine, a holster, a rifle scope, and various rounds of loose ammunition. The CS paid ZEPEDA a total of $9,000 for all of these guns and approximately 57 grams of what were believed to be narcotics but was subsequently determined to not contain a traceable amount of narcotics.

28. **Firearm sale 9**: On or about May 13, 2025, outside of ZEPEDA and ROMERO's residence, ZEPEDA received $6,000 from the CS for the sale of an AK-47 rifle, bearing serial number WM02-001173, with a magazine; a Masterpiece Arms, Defender, 9mm pistol, bearing serial number FX25589, with a barrel extension and magazine containing 21 rounds of 9mm ammunition; and several additional magazines and ammunition.

29. **Firearm sale 10**: On or about August 22, 2025, at ZEPEDA and ROMERO's residence, with ZEPEDA and ROMERO both present, the CS purchased: (1) a 1 DEL-TON Inc., DTI-15 5.56 caliber rifle, bearing serial number B-16484, that also had a SPARC optic and PMAG magazine; (2) an I.O. Inc. MONROE NC Hellcat .380 caliber pistol, bearing serial number 06156, and a .380 six round magazine that had five Hornady .380 rounds with red tips inside; (3) a Sun City Machinery Co. Stevens, Model 320, 12 gauge shotgun, bearing serial number 132921Q; 15 shotgun ammunition shells of various sizes; two RVA 7.62 x 39

8

ammunition rounds; and one "WMA 24" round. ZEPEDA received $800 for the pistol and $2,600 for the two long guns.

30. On that same day, the CS overheard a phone call between ZEPEDA and an unknown individual discussing shipping firearms to the Gulf of Mexico.

31. On that same day, ZEPEDA told the CS that he was planning to pick up a Glock firearm in Woodbridge, Virginia and that the CS was to pay his wife, JENIFER ROMERO, $300 for helping with the deal that day.

32. **Firearm sale 11**: On or about September 22, 2025, at ZEPEDA and ROMERO's residence, ZEPEDA sold the CS a Glock, Model 43X, bearing serial number BNPE575, with a 9mm round in the chamber, as well as a magazine with six rounds of 9mm ammunition in it. ZEPEDA received $1,500 for the firearm. ZEPEDA was running late and, instead of giving the Glock 43X to the CS, ZEPEDA retained possession of the Glock 43X and placed it in his bag and then placed his bag and the Glock 43X in his gray Dodge Ram truck.

33. On or about September 22, 2025, ZEPEDA drove the CS and JENIFER ROMERO to the Cerritos Ranch, where they met with Unindicted Co-conspirator-1 ("UCC-1"). ZEPEDA asked the CS for $2,500, which the CS gave to ZEPEDA and, in turn, ZEPEDA gave the money to UCC-1 in exchange for a rifle, a Ruger AR15, bearing serial number 1852-23073.

34. On or about September 22, 2025, while at the Cerritos Ranch, the CS gave ZEPEDA $2,500 to purchase another firearm. While the CS and JENIFER ROMERO waited in a vehicle on the Cerritos Ranch property, ZEPEDA gave CERRITOS $2,500 and CERRITOS gave ZEPEDA the rifle, a Remington 770, 30-06 caliber rifle, bearing serial number 71418219.

35. On that same day, ZEPEDA told the CS that he used to sell five guns a week to MS-13.

9

36.    On that same day, ZEPEDA, JENIFER ROMERO, and the CS traveled to Washington, D.C. and purchased approximately a half kilogram of cocaine.

37.    **Firearm sale 12**: On or about October 21, 2025, the CS drove to ZEPEDA and JENIFER ROMERO's residence to purchase approximately one kilogram of cocaine and then two firearms. ZEPEDA, JENIFER ROMERO, and the CS traveled to Washington, D.C. and purchased approximately one kilogram of cocaine. After ZEPEDA, JENIFER ROMERO, and the CS returned to the residence in the Eastern District of Virginia, ZEPEDA removed from his red truck a Stag Arms model Stag-13 AR15, bearing serial number 41444, which the CS purchased, along with two empty metal magazines, for $2,600. The CS had planned to purchase two pistols from ZEPEDA, but ZEPEDA said this is what he was selling to the CS.

38.    **Firearm sale 13**: On or about December 11, 2025, ZEPEDA sold the CS six firearms and various ammunition at the Cerritos Ranch. CERRITOS and JENIFER ROMERO were present with ZEPEDA. ZEPEDA sold the CS the firearms in his red truck, which included the following: (1) a Double Star Corp, Star 15, Multi Caliber, black rifle, bearing serial number D0025056 (with one magazine); (2) a Sarsilmaz, Sar 9 Mete, 9mm caliber, tan pistol, bearing serial number T1102-22CD63068 (with two magazines); (3) a Beretta USA Corp, APX A1, 9mm caliber, black pistol, bearing serial number AXC178064 (with one magazine); (4) a Glock, Model 17, 9mm caliber, black pistol, bearing serial number AGV040 (with attached light and one extended magazine); (5) a Masterpiece Arms, Model M10 (45 ACP), .45 caliber, black pistol, bearing serial number A4655 (with two magazines and a cosmetic "suppressor"); (6) a Ruger, Model GP100, .357 caliber, black revolver, bearing serial number 170-22747; 16 rounds of .45 caliber ammunition in a plastic bag; and 48 rounds of various assorted calibers of ammunition. ZEPEDA received $15,000 for this sale.

39.  **Firearm sale 14**: On or about January 21, 2026, at ZEPEDA and JENIFER

ROMERO's residence, ZEPEDA sold the CS the following 14 firearms for $43,000:

- a Palmetto State Armory, Model KS-47G, 7.62mm caliber, semi-automatic pistol, bearing serial number KSG2001454;

- a Diamondback, Model DB15, 5.56mm caliber, semi-automatic rifle, bearing serial number DB3244745;

- a Black Rain Ordnance, Model Spec 15, 5.56mm caliber, semi-automatic rifle, bearing serial number SF004151;

- a Taurus, Model Ultra-light, .38 caliber, revolver, bearing serial number AHK154163;

- a Bear Creek Arsenal, Model BCA-15, 5.56mm caliber, semi-automatic rifle, bearing serial number A141455;

- a Radical Firearms, Model RF-15, 5.56mm caliber, semi-automatic rifle, bearing serial number 24-115098;

- a Bear Creek Arsenal, Model BCA-15, 5.56mm caliber, semi-automatic rifle, bearing serial number A141454;

- a Beretta, Model APX, 9mm caliber, semi-automatic pistol, bearing serial number AXC180399;

- a Taurus, Model GX2, 9mm caliber, semi-automatic pistol, bearing serial number AHB772581;

- a Sarsilmaz, Model SAR9, 9mm caliber, semi-automatic pistol, bearing serial number T1102-23BV23750;

- a Smith & Wesson, Model MP9 Shield, 9mm caliber, semi-automatic pistol, bearing serial number HYA1708;

- a Sarsilmaz, Model B6C, 9mm caliber, semi-automatic pistol, bearing serial number T1102-25G00558;

- a Heritage, Model Barkeep, .22 caliber, revolver, bearing serial number 1B4747321; and

- a Taurus, Model PT111, 9mm caliber, semi-automatic pistol, bearing serial number AE608033.

(All in violation of Title 18, United States Code, Section 371 and 922(a)(1)(A).)

11

## COUNT TWO

### (Conspiracy to Distribute a Controlled Substance)

THE GRAND JURY FURTHER CHARGES THAT:

40.    The allegations of the introductory paragraphs 1 – 7 above, and the overt acts alleged in paragraphs 16 – 39 of Count One, are incorporated by reference as if fully set forth herein.

41.    From in and around December 2024, and continuing thereafter up to and including at least January 2026, the exact dates being unknown to the grand jury, within the Eastern District of Virginia, and elsewhere, the defendants, JORGE STEVE ZEPEDA IRIAS, JENIFER ICELA ROMERO FABIAN, JORGE MANUEL ROMERO, OSCAR RAQUEL CUELLAR MACUA, EVELYN ESMERALDA VILLATORO, OSCAR VLADIMIR PADILLA PORTILLO, and DAMON DARNELL GRAY did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree with each other and with others, both known and unknown to the Grand Jury, to unlawfully, knowingly, and intentionally distribute a controlled substance, to wit: five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

### MANNER AND MEANS OF THE CONSPIRACY

The primary purpose of the conspiracy was to make money through distributing cocaine within the Eastern District of Virginia and elsewhere. The manner and means by which the defendants and their co-conspirators conducted this conspiracy included, but were not limited to, the following:

12

42.    It was part of the conspiracy that members of the conspiracy acquired cocaine from a source or sources of supply in the Eastern District of Virginia and elsewhere.

43.    It was further part of the conspiracy that members of the conspiracy distributed cocaine in the Eastern District of Virginia and elsewhere.

44.    It was further part of the conspiracy that members of the conspiracy possessed cocaine for further distribution in the Eastern District of Virginia and elsewhere.

45.    It was further part of the conspiracy that members of the conspiracy used cell phones to communicate with each other, including through voice calls, video calls, and text messages.

46.    It was the practice of the conspiracy for CUELLAR and VILLATORO to broker the acquisition of cocaine from JORGE ROMERO, PORTILLO, GRAY, and others on behalf of ZEPEDA and JENIFER ROMERO.

OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, the defendants and their conspirators performed the following overt acts and others in the Eastern District of Virginia and elsewhere:

47.    In and around November 2024, ZEPEDA discussed with the CS purchasing a kilogram of cocaine and how much profit could be made from selling it.

48.    **Cocaine sale 1:** On or about December 4, 2024, in addition to one or more firearms described above in Count One, ZEPEDA sold to the CS approximately 7.5 grams of cocaine at the Cerritos Ranch. The CS paid ZEPEDA a total of $2,550 for the cocaine and firearms.

13

49.     **Cocaine sale 2:** On or about May 13, 2025, outside of the ZEPEDA and ROMERO residence and in addition to one or more firearms as described above in Count One, ZEPEDA sold to the CS approximately 15.4 grams of cocaine for $1,000. During this transaction, ZEPEDA fired one firearm, an AK-47, into the ground and pointed a second firearm, a revolver, at the CS' torso.

50.     **Cocaine sale 3:** On or about August 22, 2025, in addition to the one or more firearms described above in Count One that were sold at ZEPEDA and JENIFER ROMERO's residence, ZEPEDA and CUELLAR discussed a potential purchase of cocaine with an individual whose telephone number was associated with JORGE ROMERO. The seller indicated that the amount of cocaine ZEPEDA and CUELLAR were looking to purchase was too low.

51.     That same day, ZEPEDA and JENIFER ROMERO then arranged for the sale of cocaine to the CS from a different supplier.

52.     On or about August 22, 2025, ZEPEDA and JENIFER ROMERO took the CS to Manassas, Virginia, to obtain approximately 86.6 grams of cocaine from unknown individuals. The CS paid ZEPEDA and the other unknown individuals $3,650 for this cocaine.

53.     **Cocaine sale 4:** On or about September 22, 2025, in addition to selling the CS one or more firearms described above in Count One, ZEPEDA and JENIFER ROMERO took the CS to meet with CUELLAR and VILLATORO in Arlington, Virginia. CUELLAR and VILLATORO arranged for the purchase of cocaine from JORGE ROMERO, and the five of them then traveled to a pre-arranged meeting location Washington, D.C., where ZEPEDA and CUELLAR purchased approximately half a kilogram of cocaine from JORGE ROMERO. ZEPEDA and CUELLAR used $11,500 provided by the CS for this purchase.

54.    ZEPEDA brought one of the firearms that he had sold to the CS, a Glock, Model 43X, 9mm, handgun bearing serial number BNPE575, with him to the cocaine buy.

55.    During the drive to Washington, D.C., JENIFER ROMERO coached the CS on how to interact with the individual selling them cocaine.

56.    After the purchase of the cocaine from JORGE ROMERO, ZEPEDA handed the cocaine to the CS and then drove JENIFER ROMERO and the CS back to ZEPEDA and ROMERO's residence.

57.    On or about September 22, 2025, ZEPEDA sent VILLATORO $200 via Zelle.

58.    **Cocaine sale 5:** On or about October 21, 2025, the CS met with ZEPEDA AND JENIFER ROMERO at their residence as described above in Count One for a cocaine and firearm deal. ZEPEDA and JENIFER ROMERO then arranged to take the CS to Arlington, Virginia, where they met with CUELLAR, who had brokered the previous cocaine purchase from JORGE ROMERO. ZEPEDA, JENIFER ROMERO, the CS, and CUELLAR then traveled to a pre-arranged meeting place in Washington, D.C., to obtain approximately one kilogram of cocaine from JORGE ROMERO.

59.    ZEPEDA and CUELLAR used $23,000 provided by the CS for this purchase.

60.    After the purchase of the cocaine from JORGE ROMERO, ZEPEDA handed the approximately one kilogram of cocaine to the CS and then drove JENIFER ROMERO and the CS back to ZEPEDA and ROMERO's residence, dropping off CUELLAR in Arlington, Virginia, on the way.

61.    After returning to ZEPEDA and ROMERO's residence, ZEPEDA sold the CS a firearm, as described above in Count One.

15

62.     **Cocaine sale 6:** On or about January 21, 2026, after selling the CS the one or more firearms described above in Count One at their residence, ZEPEDA and JENIFER ROMERO took the CS to Arlington, Virginia to meet CUELLAR and VILLATORO, who had brokered a deal to purchase approximately four kilograms of cocaine from PORTILLO.

63.     The four of them then traveled to Washington, D.C., where ZEPEDA and CUELLAR met with PORTILLO, who arranged for GRAY to bring cocaine to the meeting site.

64.     During the drive to Washington, D.C., JENIFER ROMERO entered the address for the meeting location into a navigation application on her phone.

65.     That same day, ZEPEDA and CUELLAR purchased approximately four kilograms of cocaine from PORTILLO and GRAY for approximately $92,000, which had been provided by the CS for this purchase.

66.     After the buy on January 21, 2026, GRAY evaded law enforcement and ran from PORTILLO's vehicle with the buy money, which has still not been recovered.

(All in violation of Title 21, United States Code, Section 846.)

16

## COUNT THREE

### *(Distribution of Cocaine)*

THE GRAND JURY FURTHER CHARGES THAT:

67.    The allegations of the introductory paragraphs 1 – 7 above, and the overt acts alleged in paragraphs 16 – 39 of Count One and paragraphs 47 – 66 of Count Two, are incorporated by reference as if fully set forth herein.

68.    On or about September 22, 2025, as described above in Count Two, in the Eastern District of Virginia and elsewhere, defendants JORGE STEVE ZEPEDA IRIAS, JENIFER ICELA ROMERO FABIAN, OSCAR RAQUEL CUELLAR MACUA, EVELYN ESMERALDA VILLATORO, and JORGE MANUEL ROMERO, did knowingly and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT FOUR

### *(Distribution of Cocaine)*

THE GRAND JURY FURTHER CHARGES THAT:

69.     The allegations of the introductory paragraphs 1 – 7 above, and the overt acts alleged in paragraphs 16 – 39 of Count One and paragraphs 47 – 66 of Count Two, are incorporated by reference as if fully set forth herein.

70.     On or about October 21, 2025, as described above in Count Two, in the Eastern District of Virginia and elsewhere, defendants JORGE STEVE ZEPEDA IRIAS, JENIFER ICELA ROMERO FABIAN, OSCAR RAQUEL CUELLAR MACUA, and JORGE MANUEL ROMERO, did knowingly and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

18

## COUNT FIVE

*(Using, Carrying, Brandishing of a Firearm in Furtherance of a Drug Trafficking Crime)*

THE GRAND JURY FURTHER CHARGES THAT:

71.     The allegations of the introductory paragraphs 1 – 7 above, and the overt acts alleged in paragraphs 16 – 39 of Count One and paragraphs 47 – 66 of Count Two, are incorporated by reference as if fully set forth herein.

72.     On or about May 13, 2025, in Fairfax County, Virginia, within the Eastern District of Virginia, defendant JORGE STEVE ZEPEDA IRIAS did knowingly and unlawfully use, carry, and brandish a firearm, specifically a revolver, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Conspiracy to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as set forth in Count Two of this Indictment, which is realleged and incorporated herein by reference, and did knowingly use, carry, and brandish such firearm in furtherance of that drug trafficking crime.

(In violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).)

19

## COUNT SIX

(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

THE GRAND JURY FURTHER CHARGES THAT:

73.    The allegations of the introductory paragraphs 1 – 7 above, and the overt acts alleged in paragraphs 16 – 39 of Count One and paragraphs 47 – 66 of Count Two, are incorporated by reference as if fully set forth herein.

74.    On or about September 22, 2025, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, defendant JORGE STEVE ZEPEDA IRIAS did knowingly and unlawfully possess a firearm, specifically a Glock, Model 43X, 9mm, handgun, bearing serial number BNPE575, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Conspiracy to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as set forth and charged in Count Two of this Indictment, which is realleged and incorporated herein by reference, and did knowingly possess such firearm in furtherance of that drug trafficking crime.

(In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).)

FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE, AS DESCRIBED BELOW:

Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, the defendants are hereby notified that:

1.     If convicted of the violations alleged in Count Two of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), the following: (1) any property constituting, or derived from, any proceeds the defendant(s) obtained, directly or indirectly, as the result of such violation; and (2) any property used, or intended to be used, in any matter or part, to commit, or to facilitate the commission of, such violation.

2.     If convicted of any of the violations set forth in this Indictment, they shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in or used in such violation.

3.     The property subject to forfeiture includes, but is not limited to, the following:

(a)     The firearms described above in Count 1 and others recovered during the course of the investigation, specifically:

| Reference No. | Make/model | Type | Serial # |
|---|---|---|---|
| 001 | P365 Sig Sauer | pistol | 66B977231 |
| 002 | Arsenal AK-47, Model SAM7SF | rifle | BE532185 |
| 003 | Fabrique Nationale Herstal Belgique 9mm caliber | pistol | 245NM03967 |
| 004 | Taurus PT111 Millennium G2 9mm caliber | pistol | TJZ92181 |
| 005 | AR-15 | rifle | MTS04612 |

| | | | |
|---|---|---|---|
| 006 | CN ROMARM 5A/CUGIR AK-47, 7.62 x 39mm caliber | rifle | ED3426 |
| 007 | Kel-Tec .380 caliber | pistol | HUE76 |
| 008 | Phoenix Arms, Model HP22A, .22 caliber | pistol | 4079101 |
| 009 | Kimber, Black Micro 9, 9mm caliber | pistol | PB0411385 |
| 010 | PMG KAHR Arms, 9mm caliber | pistol | N/A (ghost) |
| 011 | Polymer80, Inc | pistol | N/A (ghost) |
| 012 | Glock, Model 38, .45 caliber | pistol | HCD233 |
| 013 | Kel-Tec, Model PLR-22, .22 caliber | pistol | U3362 |
| 014 | Ruger AR-556, semi-automatic AR-15 | rifle | 854-32521 |
| 015 | Taurus .40 caliber | pistol | SKP25544 |
| 016 | Beretta 9mm caliber | pistol | AXC046003 |
| 017 | Dan Wesson Arms .32 caliber | revolver | F001084 |
| 018 | Smith & Wesson .38 caliber | revolver | 96K4530 |
| 019 | AK-47 | rifle | WM02-001173 |
| 020 | Masterpiece Arms, Defender, 9mm caliber | pistol | FX25589 |
| 021 | 1 DEL-TON Inc., DTI-15 5.56 caliber | rifle | B-16484 |
| 022 | I.O. Inc. MONROE NC Hellcat .380 | pistol | 06156 |
| 023 | Sun City Machinery Co. Stevens, Model 320, 12 gauge | shotgun | 132921Q |
| 024 | Glock, Model 43X | pistol | BNPE575 |
| 025 | Ruger AR15 | rifle | 1852-23073 |
| 026 | Remington 770, 30-06 caliber | rifle | 71418219 |
| 027 | Stag Arms model Stag-13 AR15 | rifle | 41444 |
| 028 | Double Star Corp, Star 15, multi-caliber | rifle | D0025056 |
| 029 | Sarsilmaz, Sar 9 Mete, 9mm caliber | pistol | T1102-22CD63068 |
| 030 | Beretta USA Corp, APX A1, 9mm caliber | pistol | AXC178064 |

22

| 031 | Glock, Model 17, 9mm caliber | pistol | AGV040 |
| 032 | Masterpiece Arms, Model M10 (45 ACP), .45 caliber | pistol | A4655 |
| 033 | Ruger, Model GP100, .357 caliber | revolver | 170-22747 |
| 034 | Palmetto State Armory, Model KS-47G, 7.62mm caliber, semi-automatic | pistol | KSG2001454 |
| 035 | Diamondback, Model DB15, 5.56mm caliber, semi-automatic | rifle | DB3244745 |
| 036 | Black Rain Ordnance, Model Spec 15, 5.56mm caliber, semi-automatic | rifle | SF004151 |
| 037 | Taurus, Model Ultra-light, .38 caliber | revolver | AHK154163 |
| 038 | Bear Creek Arsenal, Model BCA-15, 5.56mm caliber, semi-automatic | rifle | A141455 |
| 039 | Radical Firearms, Model RF-15, 5.56mm caliber, semi-automatic | rifle | 24-115098 |
| 040 | Bear Creek Arsenal, Model BCA-15, 5.56mm caliber, semi-automatic | rifle | A141454 |
| 041 | Beretta, Model APX, 9mm caliber, semi-automatic | pistol | AXC180399 |
| 042 | Taurus, Model GX2, 9mm caliber, semi-automatic | pistol | AHB772581 |
| 043 | Sarsilmaz, Model SAR9, 9mm caliber, semi-automatic | pistol | T1102-23BV23750 |
| 044 | Smith & Wesson, Model MP9 Shield, 9mm caliber, semi-automatic | pistol | HYA1708 |
| 045 | Sarsilmaz, Model B6C, 9mm caliber, semi-automatic | pistol | T1102-25G00558 |
| 046 | Heritage, Model Barkeep, .22 caliber | revolver | 1B4747321 |
| 047 | Taurus, Model PT111, 9mm caliber, semi-automatic | pistol | AE608033 |
| 048 | Savage Model 93, .22 caliber, WMR | rifle | 1632331 |

23

and

(b)    All magazines and ammunition described in Count 1.

4.    Pursuant to 21 U.S.C. § 853(p), the defendant(s) shall forfeit substitute property, if, by any act or omission of the defendant(s), the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Title 18, United States Code, Sections 924(d)(1); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c); and Federal Rule of Criminal Procedure 32.2.)

A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson of the Grand Jury

TODD W. BLANCHE
Deputy Attorney General

By: _____
Nicholas J. Patterson
Assistant United States Attorney
Nicholas J. Bolzman
Special Assistant United States Attorney

24