IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
IN OPEN COURT

MAY - 1 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

JORGE STEVE ZEPEDA IRIAS,

Defendant.

Case No. 1:26-CR-35-LMB

## STATEMENT OF FACTS

The United States and the defendant, Jorge Steve Zepeda Irias (hereinafter, "the defendant"), agree that the allegations in Counts 1, 2, 5, and 6 of the Superseding Indictment and the following facts are true and accurate, and that, had this matter proceeded at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.    From in and around July 2024 and continuing thereafter to at least in and around January 2026, within the Eastern District of Virginia and elsewhere, the defendant, JORGE STEVE ZEPEDA IRIAS, knowingly and unlawfully combined, conspired, confederated, and agreed with JENIFER ICELA ROMERO FABIAN (hereinafter "JENIFER ROMERO"), JUAN FRANCISCO ENRIQUEZ CERRITOS Sr. (hereinafter "CERRITOS"), and others known and unknown to willfully engage in the business of dealing in more than 25 firearms, and in the course of such business, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, in violation of Title 18, United States Code, Sections 371 and 922(a)(1).

2.    None of the named defendants possessed a license to legally deal in firearms at any time relevant to the Superseding Indictment.

1

3.      From in and around July 2024 and continuing thereafter to at least in and around January 2026, within the Eastern District of Virginia and elsewhere, on approximately fourteen different occasions and in furtherance of the conspiracy, the defendant sold approximately 47 firearms to a confidential source (hereinafter "confidential source"), including at least two stolen firearms and two firearms without serial numbers ("ghost guns").  The firearms the defendant sold also included revolvers, shotguns, semi-automatic pistols, and assault rifles, including AR-15s and AK-47s.  The defendant also sold ammunition alongside these firearms.  One magazine was disguised to appear as if it did not contain real ammunition in an attempt to trick law enforcement into thinking it was not a real weapon.

4.      In furtherance of this conspiracy, the defendant sold additional firearms besides those sold to the confidential source.

5.      These sales happened primarily at two locations: the defendant's residence in Chantilly, Virginia, which he shares with JENIFER ROMERO, and the "Rancho Los Cerritos" or "the Cerritos Ranch" (hereinafter "the Cerritos Ranch"), a property in Haymarket, Virginia, which is leased and operated by CERRITOS.  Both of these locations are within the Eastern District of Virginia.

6.      The defendant was assisted in several of the firearms sales by JENIFER ROMERO, who participated in the receipt and storage of firearms and who was present for several of the sales.

7.      The sales of firearms that took place at the Cerritos Ranch were at times conducted in the presence of CERRITOS, firearms were at times provided by CERRITOS, and profits from the sales were at times shared by the defendant with CERRITOS.

8.      On or about August 22, 2025, the defendant engaged in a phone conversation with

2

an unknown individual discussing shipping firearms to the Gulf of Mexico.

9.    Over the course of these firearms sales, the defendant told the confidential source that he used to sell five guns a week to members of MS-13 (a.k.a "Mara Salvatrucha"), a violent transnational criminal organization.  The defendant further stated that he had previously sold over 100 firearms to MS-13 members.

10.    Furthermore, from in and around December 2024, and continuing thereafter up to and including January 2026, within the Eastern District of Virginia and elsewhere, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with JENIFER ROMERO, JORGE MANUEL ROMERO (hereinafter "JORGE ROMERO"), OSCAR RAQUEL CUELLAR MACUA (hereinafter "CUELLAR"), EVELYN ESMERALDA VILLATORO (hereinafter "VILLATORO"), OSCAR VLADIMIR PADILLA PORTILLO (hereinafter "PORTILLO"), DAMON DARNELL GRAY (hereinafter "GRAY"), and others known and unknown, to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

11.    In and around November of 2024, the defendant discussed with the confidential source purchasing a kilogram of cocaine and how much profit could be made from selling it.  On or about December 4, 2024, in addition to one or more firearms, the defendant sold to the confidential source approximately 7.5 grams of cocaine at the Cerritos Ranch.

12.    On or about May 13, 2025, outside of the defendant's and ROMERO's residence and in addition to one or more firearms, the defendant sold approximately 15.4 grams of cocaine to the confidential source.  During this transaction, the defendant fired one firearm, an AK-47, into the ground and displayed a second firearm, a revolver, in a way that was intended to

3

intimidate, and did intimidate, the confidential source, while pressuring the confidential source to purchase additional contraband.

13.    On or about August 22, 2025, the defendant, the confidential source, CUELLAR, JORGE ROMERO, and two associates of JORGE ROMERO participated in a video call discussing the purchase of cocaine. A purchase from JORGE ROMERO was not conducted that day because the amount that the defendant was seeking was too small for JORGE ROMERO's operation—they would not break up a brick or kilogram of cocaine for a smaller deal. During the video call, JORGE ROMERO and his associates showed the defendant, the confidential source, and CUELLAR what appeared to be numerous bricks of cocaine and one of the brick's packaging. After this video call, the defendant and JENIFER ROMERO purchased approximately 86.6 grams of cocaine from a different source.

14.    On or about September 22, 2025, after selling the confidential source firearms, in a meeting arranged by CUELLAR and VILLATORO, the defendant, JENIFER ROMERO, and the confidential source traveled with CUELLAR and VILLATORO from Arlington, Virginia, in the Eastern District of Virginia, to Washington, D.C., to meet with and purchase cocaine from JORGE ROMERO. At that meeting, the defendant and CUELLAR entered JORGE ROMERO's vehicle and purchased approximately half a kilogram of cocaine from JORGE ROMERO.

15.    Prior to driving to Washington, D.C. on September 22, 2025, the defendant placed a firearm, a Glock, Model 43X, 9mm, handgun bearing serial number BNPE575, in his vehicle. This firearm remained in his vehicle, which he drove to and from Washington D.C. to purchase cocaine, for the duration of the September 22, 2025, cocaine buy.

16.    After the purchase of the cocaine from JORGE ROMERO, the defendant drove the confidential source and JENIFER ROMERO back to ZEPEDA and ROMERO's residence in

4

the Eastern District of Virginia.

17.    On or about September 22, 2025, the defendant sent VILLATORO $200 via Zelle as payment for facilitating the drug deal.

18.    On or about October 21, 2025, in a meeting arranged by CUELLAR and VILLATORO, the defendant, JENIFER ROMERO, and the confidential source traveled with CUELLAR from Arlington, Virginia to Washington, D.C., to meet with and purchase cocaine from JORGE ROMERO.  At that meeting, the defendant and CUELLAR entered JORGE ROMERO's vehicle and purchased approximately one kilogram of cocaine from JORGE ROMERO.  JORGE ROMERO had additional kilogram bricks of cocaine, as well as other drugs in his vehicle beyond those he sold to the defendant and CUELLAR.

19.    After the purchase of the cocaine from JORGE ROMERO, the defendant drove JENIFER ROMERO and the confidential source to ZEPEDA and ROMERO's residence, dropping off CUELLAR in Arlington, Virginia.

20.    After returning to ZEPEDA and ROMERO's residence, the defendant sold the confidential source a firearm.

21.    On or about January 21, 2026, after selling the confidential source firearms at the ZEPEDA and ROMERO residence, in a meeting arranged by CUELLAR and VILLATORO, the defendant, JENIFER ROMERO, and the confidential source traveled with CUELLAR and VILLATORO from Arlington, Virginia to Washington, D.C., to meet with and purchase cocaine from PORTILLO and GRAY.

22.    During the drive to Washington, D.C., JENIFER ROMERO entered the address for the meeting location into a navigation application on her phone.

23. At that meeting, the defendant and CUELLAR purchased approximately four kilograms of cocaine from PORTILLO and GRAY. Specifically, the defendant and CUELLAR entered PORTILLO's vehicle and then GRAY entered PORTILLO's vehicle with the approximately four kilograms of cocaine. PORTILLO and GRAY then sold the approximately four kilograms of cocaine to the defendant and CUELLAR.

24. JENIFER ROMERO's role during these transactions was to sit with and monitor the confidential source while the defendant and CUELLAR purchased the cocaine.

25. Over the course of the conspiracy, the defendant and his co-defendants distributed approximately 5.5 kilograms of cocaine.

26. The defendant admits that the firearms seized in this case, and which are further described in the Plea Agreement, represent property involved in the offense and agrees to their forfeiture to the United States.

27. The defendant's actions, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

28. This statement of the facts includes those facts necessary to support the defendant's plea. It does not include each and every fact known to the defendant or the United States and is not intended to be a full enumeration of all the facts surrounding the defendant's case.

29. This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether it is presented to or accepted by a court.

6

30.    The defendant waives any rights that he may have under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Respectfully submitted,

TODD W. BLANCHE
Acting Attorney General

Date: _04/d/26_          By: _____
                              Nicholas J. Patterson
                              Assistant United States Attorney
                              Nicholas J. Bolzman
                              Special Assistant United States Attorney

7

I have read the above Statement of Facts and carefully reviewed every part of it with my attorney with the assistance of a Spanish interpreter. After consulting with my attorney, I, JORGE STEVE ZEPEDA IRIAS, hereby stipulate that the above Statement of Facts is true and accurate, and that, had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JORGE STEVE ZEPEDA IRIAS

I am Andrew M. Stewart, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant with the assistance of a Spanish interpreter. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Andrew M. Stewart
Attorney for JORGE STEVE ZEPEDA IRIAS

8