IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
IN OPEN COURT

MAY 26 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

JENIFER ICELA ROMERO FABIAN,

Defendant.

Case No. 1:26-CR-35-LMB

## STATEMENT OF FACTS

The United States and the defendant, Jenifer Icela Romero Fabian (hereinafter, "the defendant"), agree that the allegations in Counts 1 and 2 of the Superseding Indictment and the following facts are true and accurate, and that, had this matter proceeded at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From in and around July 2024 and continuing thereafter to at least in and around January 2026, within the Eastern District of Virginia and elsewhere, the defendant, JENIFER ICELA ROMERO FABIAN, knowingly and unlawfully combined, conspired, confederated, and agreed with JORGE STEVE ZEPEDA IRIAS (hereinafter "ZEPEDA"), JUAN FRANCISCO ENRIQUEZ CERRITOS Sr. (hereinafter "CERRITOS"), and others known and unknown to willfully engage in the business of dealing in more than 25 firearms, and in the course of such business, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, in violation of Title 18, United States Code, Sections 371 and 922(a)(1).

2. None of the named defendants possessed a license to legally deal in firearms at any time relevant to the Superseding Indictment.

1

3.      From in and around July 2024 and continuing thereafter to at least in and around January 2026, within the Eastern District of Virginia and elsewhere, on approximately fourteen different occasions and in furtherance of the conspiracy, ZEPEDA sold approximately 47 firearms to a confidential source (hereinafter "confidential source"), including at least two stolen firearms and two firearms without serial numbers ("ghost guns"). The firearms ZEPEDA and the defendant sold also included revolvers, shotguns, semi-automatic pistols, and assault rifles, including AR-15s and AK-47s. ZEPEDA also sold ammunition alongside these firearms. One magazine was disguised to appear as if it did not contain real ammunition in an attempt to trick law enforcement into thinking it was not a real weapon.

4.      In furtherance of this conspiracy, ZEPEDA sold additional firearms besides those sold to the confidential source.

5.      These sales happened primarily at two locations: the defendant's residence in Chantilly, Virginia, which she shares with ZEPEDA, and the "Rancho Los Cerritos" or "the Cerritos Ranch" (hereinafter "the Cerritos Ranch"), a property in Haymarket, Virginia, which is leased and operated by CERRITOS. Both of these locations are within the Eastern District of Virginia.

6.      The defendant assisted ZEPEDA in several of the firearms sales by participating in the sales of and receiving and storing firearms.

7.      The sales of firearms that took place at the Cerritos Ranch were at times conducted in the presence of CERRITOS, firearms were at times provided by CERRITOS, and profits from the sales were at times shared by ZEPEDA and the defendant with CERRITOS.

8.      Furthermore, from in and around December 2024, and continuing thereafter up to and including January 2026, within the Eastern District of Virginia and elsewhere, the defendant

2

knowingly and intentionally combined, conspired, confederated, and agreed with ZEPEDA, JORGE MANUEL ROMERO (hereinafter "JORGE ROMERO"), OSCAR RAQUEL CUELLAR MACUA (hereinafter "CUELLAR"), EVELYN ESMERALDA VILLATORO (hereinafter "VILLATORO"), OSCAR VLADIMIR PADILLA PORTILLO (hereinafter "PORTILLO"), DAMON DARNELL GRAY (hereinafter "GRAY"), and others known and unknown, to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

9.      In and around November of 2024, ZEPEDA discussed with the confidential source purchasing a kilogram of cocaine and how much profit could be made from selling it.  On or about December 4, 2024, in addition to one or more firearms, ZEPEDA sold to the confidential source approximately 7.5 grams of cocaine at the Cerritos Ranch.

10.      On or about August 22, 2025, ZEPEDA, the confidential source, CUELLAR, JORGE ROMERO, and two associates of JORGE ROMERO participated in a video call discussing the purchase of cocaine.  A purchase from JORGE ROMERO was not conducted that day because the amount that ZEPEDA was seeking was too small for JORGE ROMERO's operation—they would not break up a brick or kilogram of cocaine for a smaller deal.  During the video call, JORGE ROMERO and his associates showed ZEPEDA, the confidential source, and CUELLAR what appeared to be numerous bricks of cocaine and one of the brick's packaging. After this video call, the defendant and ZEPEDA purchased approximately 86.6 grams of cocaine from a different source.

11.      On or about September 22, 2025, after selling the confidential source firearms, in a meeting arranged by CUELLAR and VILLATORO, the defendant, ZEPEDA, and the

3

confidential source traveled with CUELLAR and VILLATORO from Arlington, Virginia, in the Eastern District of Virginia, to Washington, D.C., to meet with and purchase cocaine from JORGE ROMERO. At that meeting, ZEPEDA and CUELLAR entered JORGE ROMERO's vehicle and purchased approximately half a kilogram of cocaine from JORGE ROMERO. The defendant remained in her and ZEPEDA's vehicle to monitor the confidential source. The defendant coached the confidential source on how to interact with a drug dealer like JORGE ROMERO.

12. After the purchase of the cocaine from JORGE ROMERO, ZEPEDA drove the confidential source and the defendant back to ZEPEDA and ROMERO's residence in the Eastern District of Virginia.

13. On or about October 21, 2025, in a meeting arranged by CUELLAR and VILLATORO, the defendant, ZEPEDA, and the confidential source traveled with CUELLAR from Arlington, Virginia to Washington, D.C., to meet with and purchase cocaine from JORGE ROMERO. At that meeting, ZEPEDA and CUELLAR entered JORGE ROMERO's vehicle and purchased approximately one kilogram of cocaine from JORGE ROMERO. JORGE ROMERO had additional kilogram bricks of cocaine, as well as other drugs in his vehicle beyond those he sold to ZEPEDA and CUELLAR.

14. After the purchase of the cocaine from JORGE ROMERO, ZEPEDA drove the defendant and the confidential source to ZEPEDA and ROMERO's residence, dropping off CUELLAR in Arlington, Virginia.

15. On or about January 21, 2026, after selling the confidential source firearms at the ZEPEDA and ROMERO residence, in a meeting arranged by CUELLAR and VILLATORO, the defendant, ZEPEDA, and the confidential source traveled with CUELLAR and VILLATORO

4

from Arlington, Virginia to Washington, D.C., to meet with and purchase cocaine from PORTILLO and GRAY.

16.     During the drive to Washington, D.C., the defendant entered the address for the meeting location into a navigation application on her phone.

17.     At that meeting, ZEPEDA and CUELLAR purchased approximately four kilograms of cocaine from PORTILLO and GRAY. Specifically, ZEPEDA and CUELLAR entered PORTILLO's vehicle and then GRAY entered PORTILLO's vehicle with the approximately four kilograms of cocaine. PORTILLO and GRAY then sold the approximately four kilograms of cocaine to ZEPEDA and CUELLAR.

18.     The defendant's role during these transactions was to sit with and monitor the confidential source while ZEPEDA and CUELLAR purchased the cocaine. An additional role was to make it appear to anyone observing that ZEPEDA was simply traveling with family members rather than engaging in drug distribution.

19.     Over the course of the conspiracy, the defendant and her co-defendants distributed approximately 5.5 kilograms of cocaine.

20.     The defendant admits that the firearms seized in this case, and which are further described in the Plea Agreement, represent property involved in the offense and agrees to their forfeiture to the United States.

21.     The defendant's actions, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

22.     This statement of the facts includes those facts necessary to support the defendant's plea. It does not include each and every fact known to the defendant or the United

States and is not intended to be a full enumeration of all the facts surrounding the defendant's case.

23.    This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether it is presented to or accepted by a court.

24.    The defendant waives any rights that she may have under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Respectfully submitted,

TODD W. BLANCHE
Acting Attorney General

Date: 05/26/26                    By: _____
                                         Nicholas J. Patterson
                                         Assistant United States Attorney
                                         Nicholas J. Bolzman
                                         Special Assistant United States Attorney

6

I have read the above Statement of Facts and carefully reviewed every part of it with my attorney with the assistance of a Spanish interpreter. After consulting with my attorney, I, JENIFER ICELA ROMERO FABIAN, hereby stipulate that the above Statement of Facts is true and accurate, and that, had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JENIFER ICELA ROMERO FABIAN

I am Paul Mickelsen, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant with the assistance of a Spanish interpreter. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Paul Mickelsen
Attorney for JENIFER ICELA ROMERO FABIAN

7